IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Forrest Kelly Samples, | ) |
| | )    C/A No.: 1:13-657-MGL-SVH |
|              Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )    REPORT AND RECOMMENDATION |
| Benjamin F. Lewis, Jr.; Amy R. Enloe; Mathew L. Harper; Katherine Watson Burgess; Daniel Cotter; Larry Cartledge; Kay Humphries; and John Tamarchio, | ) |
| | ) |
|              Defendants. | ) |

Plaintiff Forrest Kelly Samples, proceeding pro se and in forma pauperis, is a pro se prisoner incarcerated at Perry Correctional Institution ("PCI") in the custody of the South Carolina Department of Corrections ("SCDC"). He filed his complaint pursuant 42 U.S.C. § 1983 alleging that Dr. Benjamin F. Lewis, Jr., Amy R. Enloe, Mathew L. Harper, Katherine Watson Burgess, Daniel Cotter, Larry Cartledge, Kay Humphries, and Dr. John Tomarchio[1] ("Defendants") were deliberately indifferent to his serious medical needs.

This matter comes before the court on Defendants' motion for summary judgment. [Entry #47]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

---

[1] Defendants indicate that John Tomarchio is the correct spelling of his name.

I.      Factual and Procedural Background

Defendants filed their motion for summary judgment on July 30, 2013. [Entry #47]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #48]. Plaintiff was specifically advised that if he failed to respond adequately, Defendants' motion may be granted, thereby ending Plaintiff's claims against them in this case. Notwithstanding the specific warning and instructions set forth in the court's *Roseboro* order, Plaintiff failed to timely respond to the motion. On October 15, 2013, the court ordered Plaintiff to advise by October 29, 2013, whether he wished to continue with the case and, if so, to file a response to Defendants' motion for summary judgment. [Entry #55].

Plaintiff filed a response to the undersigned's October 15, 2013, order that stated "I do wish to continue with this case but I can't due to not having access to the legal materials I need to complete this case (paper, envelopes, etc)." [Entry #59]. The undersigned issued an order directing Plaintiff to file a response to Defendants' motion for summary judgment by November 21, 2013, and recognizing SCDC policy that provides indigent inmates with an allotment of paper and envelopes each month. [Entry #61]. Plaintiff has failed to file a timely response to Defendants summary judgment motion.[2]

---

[2] Although the undersigned has analyzed Defendants' motion on the substantive record before the court, the undersigned alternatively recommends that Plaintiff's motion be dismissed for failure to prosecute.

Plaintiff alleges Defendants have failed to provide him adequate medical care related to his foot. [Entry #1 at 5]. Specifically, Plaintiff claims that Nurses Enloe and Burgess ignored his "requests to staff" on occasion. *Id*. at 8–10. Plaintiff alleges that PCI Health Administrator Harper failed to give him a reason why he was not entitled to crutches or a wheelchair. *Id*. at10. He sues Warden Cartledge for refusing to provide him with a handicapped cell and sues Contraband Supervisor Cotter for failing to take pictures of his foot. *Id*. at 10–11. He sues Commissary Supervisor Humphries for ignoring his request for new shoes. *Id*. at 12. He sues Dr. Lewis for refusing to give him narcotics or recommend he be given a handicapped cell, a wheelchair, or crutches. *Id*. at 12–13. Finally, Plaintiff sues Dr. Tomarchio for refusing him a follow-up appointment with a podiatrist. *Id*. at 7–8.

Plaintiff's medical records reveal that he was seen by medical on October 30, 2012, for complaints of painful bunions and pain in his heel from an old Achilles tendon tear with scarring. [Entry #47-13 at 17–18]. The records note that Plaintiff had previously been seen by an orthopedist and a podiatric consult was recommended, but disapproved. *Id*. Dr. Lewis gave Plaintiff insoles with arch supports and instructed him on stretching exercises for his heel. *Id*. Dr. Lewis also prescribed Mobic for pain and anti-inflammatory benefits. *Id*.

On January 8, 2013, Plaintiff visited sick call complaining of burning pain in his ankle that is greater when he is standing. *Id*. at 12. Mr. Harper indicated that Plaintiff walks with a limp. *Id*. He also indicated that Plaintiff was wearing size 13 shoes with

3

insoles, but that Plaintiff stated that his shoe size is a 9. *Id*. Mr. Harper scheduled Plaintiff with a follow-up appointment with Dr. Lewis. *Id*.

On January 22, 2013, Dr. Lewis saw Plaintiff for complaints of pain in his right heel and ankle. *Id*. at 11. Plaintiff informed Dr. Lewis that he had severed his Achilles tendon 20 years prior. *Id*. Dr. Lewis prescribed an ankle sleeve to give Plaintiff additional ankle support and ordered him proper-sized clogs. *Id*. at 10–11. Dr. Lewis noted that Plaintiff had scarring in his lower leg with a palpable defect in the Achilles tendon. *Id*. at 11. Dr. Lewis also ordered x-rays of Plaintiff's ankle. *Id*. The x-rays showed no indication of acute injury or chronic fracture, but there was a thickening of the distal Achilles tendon, which would be consistent with the formation of scar tissue. *Id*.

In February 2013, Plaintiff continued to complain that he was in pain when he stood up and that Mobic was not helping him. *Id*. at 9–10. On March 5, 2013, Plaintiff returned to sick call complaining about pain and requesting additional treatment. *Id*. at 8. The nurse scheduled Plaintiff an appointment with Dr. Lewis. *Id*. At his appointment with Dr. Lewis on March 26, 2013, Plaintiff complained that he had pain with weight-bearing on his right foot and that he frequently rolled his ankle. *Id*. Dr. Lewis did not observe any instability in Plaintiff's ankle, but did forward a request for a podiatry consult. *Id*. at 6. After Dr. Tomarchio requested and received additional information, he approved the request for a podiatry consult. *Id*. at 5–6.

According to Dr. Lewis' affidavit, Plaintiff was seen at the podiatry clinic on May 9, 2013, which recommended that he be provided with a lace-up ankle support, which was issued, and that he be referred to Capital Prosthetics for orthopedic shoes. [Entry

4

#47-6 at 2–3]. Dr. Tomarchio approved the referral and Plaintiff was scheduled to be seen at Capital Prosthetics on June 18, 2013, to be fitted for orthopedic shoes. *Id.* The records and affidavits are dated prior to June 18, 2013, and it is therefore unclear whether Plaintiff was fitted for orthopedic shoes on that date.

In his affidavit, Dr. Lewis also stated that Plaintiff's request for crutches, a wheelchair, and handicapped cell was not necessary and would not be beneficial for Plaintiff. *Id.* at 3. Because Plaintiff is housed in the Special Management Unit ("SMU") where inmates remain in their cell approximately 23 hours per day, he is not required to walk a great distance. *Id.* Security restrictions in the SMU prevent Plaintiff from using crutches, as they could be used as a weapon. *Id.* Additionally, crutches would not be able to be used with the restraints all SMU inmates are required to wear when outside of their cell. *Id.* Dr. Lewis does not believe a wheelchair would be beneficial for Plaintiff, because it could lead to muscle atrophy in his legs and increase the risk of pulmonary embolism due to immobility. *Id.* Dr. Lewis also stated that Plaintiff does not qualify under SCDC policy to be placed in a handicapped cell because he is able to walk, although it may sometimes be painful. *Id.* at 3–4.

Finally, Dr. Lewis stated that in his opinion, narcotics are not appropriate for Plaintiff at this time because Plaintiff has a chronic problem and likely will not receive substantial improvement. *Id.* at 4. Additionally, Dr. Lewis noted that Plaintiff's medical records reveal that he has been found on more than one occasion to be hoarding his medications, which could be dangerous with narcotic medications. *Id.* For example, Plaintiff was found on July 27, 2012, to have 125 Tegretol pills in his possession. [Entry

#47-13 at 30]. On August 1, 2012, Plaintiff stated that he had purchased 150 Tegretol pills from another inmate and was taking 8 to 10 pills at a time in order to "feel the way he thought he should be feeling." *Id.* at 27. Dr. Lewis stated that unfortunately, medical personnel are not able to eliminate all pain and even with medication Plaintiff is likely to experience some pain as a result of his underlying medical conditions. [Entry #47-6 at 4]. Based on these facts, Dr. Lewis stated that in his opinion it would not be appropriate to prescribe narcotic pain medications to Plaintiff. *Id.*

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.     Analysis

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs because: (1) he did not always receive responses to his requests to staff; (2) he did not receive crutches, a wheelchair, or a handicapped cell; (3) he did not receive orthopedic shoes; (4) he did not receive a follow-up appointment from a podiatrist; and (5) he was not prescribed narcotics. [Entry #1]. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff

8

may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Here, Plaintiff has not demonstrated a claim of deliberate indifference to his serious medical needs. Although Plaintiff may have requested particular treatment that he did not immediately receive and treatment additional to that which he received, he has not shown that Defendants were deliberately indifferent to his serious medical needs. Plaintiff was seen by medical as requested, and though he did not always receive the medicine, device, or treatment he requested, he has not shown that his constitutional rights were violated. Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Thomas v. Anderson City Jail*, No. 6:10-3270-RMG-KFM, 2011 WL 442053, at *3 (D.S.C. Jan. 19, 2011)*; Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). While the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986).

To the extent that Plaintiff believes he did not receive orthopedic shoes or a podiatric consult quickly enough, such allegations are also insufficient to state a constitutional violation. Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975). Therefore, the

9

undersigned recommends Defendants be granted summary judgment with regard to Plaintiff's claim of deliberate indifference to his serious medical needs.

The undersigned also recommends that defendant Cotter be granted summary judgment on Plaintiff's claim that Cotter refused to take a picture of Plaintiff's foot. Such a claim, even if true, fails to state a constitutional violation.

III.    Conclusion

For the foregoing reasons, the undersigned recommends Defendants' motion [Entry #47] for summary judgment be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

December 2, 2013                                Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).